# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINE LINTHICUM, | CASE NO. 13cv1099 WQH (DHB) |
| Plaintiff, | ORDER |
| vs. | |
| ROBERT J. SHENKMAN, Executor and administrator of the estate of Stanley Zielony, | |
| Defendant. | |

HAYES, Judge:

The matter before the Court is the Motion to Dismiss filed by Defendant Robert J. Shenkman. (ECF No. 3).

## PROCEDURAL HISTORY

On May 8, 2013, Plaintiff Christine Linthicum initiated this action with a Complaint against Defendant Robert J. Shenkman ("Defendant"), in his capacity as executor and administrator of the estate of Stanley Zielony. (ECF No. 1). Plaintiff alleges one claim for breach of contract related to a gift of $2,500,000.00 that Zielony allegedly made to Plaintiff in anticipation of his impending death. Plaintiff seeks to recover damages from Zielony's estate.

On May 31, 2013, Defendant filed the Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3) and 12(b)(6), along with his declaration and exhibits. (ECF Nos. 3, 3-1, 3-2, 3-3, 3-4, 3-5). On April 24, 2013, Plaintiff filed an

opposition to the Motion to Dismiss, along with her declaration. (ECF Nos. 5, 5-1). On July 1, 2013, Defendant filed a reply. (ECF No. 6).

## ALLEGATIONS OF THE COMPLAINT

"Linthicum became friends with Zielony in or around 1982, and they remained close until Zielony's death in or around late August 2012. Zielony promised Linthicum that he would always take care of her. In reliance on this promise, among other things, Linthicum maintained Zielony's house in Rancho Bernardo, California for almost a decade, from 1994 until 2003, and frequently showed Zielony's out-of-town guests around San Diego." (Complaint ¶ 7-9; ECF No. 1 at 3).

In late August 2012, a few days before Zielony's death, "[Plaintiff] called Zielony. During this call, Zielony told [Plaintiff] that he instructed [Defendant] to issue her a check for $2,500,000.00, and that she could retrieve this check after his (Zielony's) death." *Id.* ¶ 10. At the time of this call, "Zielony believed he was going to die in a few days." *Id.* ¶ 13. Plaintiff "accepted Zielony's gift," which "was given without consideration." *Id.* ¶ 16-17. "Zielony intended to make [this] gift ... to [Plaintiff], but also intended to revoke this gift in the event that he recovered from his illness." *Id.* ¶ 14. "Zielony never revoked his gift to [Plaintiff] prior to his death in late August 2012." *Id.* ¶ 18.

"Zielony, and now [Defendant], entered into a valid contract with [Plaintiff]...." *Id.* ¶ 19 (citing Cal. Civ. Code §§ 1039-40, 1146-48). "Plaintiff has duly performed all the terms and conditions of the contract on her part." *Id.* ¶ 21. "In early September, after Zielony's death, [Plaintiff] called [Defendant] to retrieve Zielony's $2,500,000.00 gift to her. [Defendant] refused to issue the $2,500,000.00 check to [Plaintiff], and still refuses." *Id.* ¶ 11. Defendant breached the contract by refusing to issue the check.

Plaintiff seeks damages in the sum of $2,500,000.00, pre-judgment interest, and attorneys' fees and costs. Plaintiff alleges that the Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because she is a citizen of California, Defendant is a citizen of New York, and Zielony was a citizen of New York. Plaintiff alleges that the

Court may properly exercise personal jurisdiction over Defendant because Zielony "purposefully directed his gift toward Plaintiff, who is a resident of the State of California," and because Plaintiff's claim "arises out of Zielony's gift." *Id.* ¶ 2. Plaintiff alleges that venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because "a substantial part of the events giving rise to Plaintiff's claim" occurred in this district. *Id.* ¶ 3.

## APPLICABLE STANDARD

Defendant moves to dismiss this action for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). "In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008) (citation omitted). In the absence of an evidentiary hearing, "the plaintiff need only make a prima facie showing of the jurisdictional facts." *Id*. (quotation omitted). "The plaintiff cannot simply rest on the bare allegations of its complaint, but uncontroverted allegations in the complaint must be taken as true. We may not assume the truth of allegations in a pleading which are contradicted by affidavit, but we resolve factual disputes in the plaintiff's favor." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011) (quotations omitted).

The exercise of personal jurisdiction over a nonresident defendant must be authorized under the state's long-arm statute and must satisfy the due process clause of the United States Constitution. *See Pac. Atl. Trading Co. v. M/V Main Express*, 758 F.2d 1325, 1327 (9th Cir. 1985). "California's long-arm statute is co-extensive with federal standards, so a federal court may exercise personal jurisdiction if doing so comports with federal constitutional due process." *Boschetto*, 539 F.3d at 1015; *see also* Cal. Civ. Pro. Code § 410.10. "For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have 'certain minimum contacts' with the relevant forum 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *CollegeSource*, 653

F.3d at 1073 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1954)). Under due process analysis, a defendant may be subject to either general or specific personal jurisdiction. *See Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 414 (1984).

## DISCUSSION

The Court may properly exercise personal jurisdiction over Zielony's estate, of which Defendant is executor, so long as the Court could properly exercise personal jurisdiction over Zielony, assuming he were alive. *See Hartog v. Jots, Inc.*, C 03-2986 SBA, 2004 WL 2663197 (N.D. Cal. Jan. 9, 2004) ("If a decedent has minimum contacts with a forum state, then so too does his estate.") (citing *SongByrd, Inc. v. Estate of Grossman*, 206 F.3d 172, 181 (2d Cir. 2000); *Hotel Ramada of Nevada v. Estate of Cheek*, 716 F. Supp. 473, 472 (D. Nev. 1989)).

Defendant contends that the Court should dismiss this action pursuant to Rule 12(b)(2) on the ground that Zielony, if he were alive, would not have sufficient minimum contacts with California. Plaintiff contends that she has made a prima facie showing of facts to support the Court's exercise of both general and specific jurisdiction.

**I.    Evidence Submitted by the Parties**

Defendant, as executor of Zielony's estate, states in his declaration:

> [Zielony] passed away on August 30, 2012. I am a co-executor of [Zielony's] estate....
>
> I first met [Zielony] in about 1967. I began working for [Zielony] as his attorney in about 1969....
>
> Plaintiff's allegation that [Zielony] owned a house in Rancho Bernardo, California is incorrect.... [T]he property in Rancho Bernardo was originally purchased by Publications Expediting Corp. ('PES') on February 24, 1982, and transferred by PES to Publications Holding Corp. ('Holdings') on September 2, 2003. Holdings then sold the property to Robert V. Hutchison and Marilyn L. Hutchison, Trustees on September 8, 2003.... [Zielony] never owned the property in question and ... never resided in the property....
>
> All of [Zielony's] business records are located in New York.... [Zielony's] estate does not own any property in California, whether tangible or otherwise....

> During the time leading up to [Zielony's] death at the age of 89, including the time period described in the Complaint when Plaintiff alleges a telephone call to [Zielony], [Zielony] was under hospice care at his home in Garden City, New York....

(Def. Decl., ECF No. 3-2 at 2-3 (citing Def. Exhs. 1-3, ECF Nos. 3-3, 3-4, 3-5 (documents regarding Rancho Bernardo property)).

In her declaration, Plaintiff states, in pertinent part:

> From approximately 1982 to 1994, Zielony visited me in Rancho Bernardo approximately two to three times a year....
>
> Until approximately 1997, Zielony's property in Rancho Bernardo was managed by one of our mutual friends, Ms. Roselle Coviello ('Coviello'). Coviello passed away in or around 1997 with $200,000.00 in her estate. At the time, Zielony said he wanted to give me more than that one day.
>
> From approximately 1997 to 2003, I managed Zielony's property in Rancho Bernardo ('property') and entertained his foreign guests, who visited and stayed at the property. Zielony's company owned this property. Zielony had control over the property and used it as a personal residence – visiting often and hosting guests....
>
> From about 1997 to 2003, Zielony continued to visit me in Rancho Bernardo two to three times a year. When he was in town, we would spend time together. I would cook him Mediterranean cuisine, which he enjoyed. During this time period, he continued to promise me that he would take care of me in my old age.
>
> In 2003, I arranged for the sale of Zielony's property in Rancho Bernardo. After the sale, Zielony continued to visit me in California approximately once a year. During these visits, Zielony promised me that I would be secure in my old age....
>
> When my husband died in 1991, he paid for my husband's funeral reception at the Rancho Bernardo Inn, without me ever asking him to do so....
>
> About four years ago, in 2009, while Zielony was visiting a friend in Palm Desert, he stopped by my home for dinner. During dinner, he told me that he wanted to give me $2,500,000.90. He jokingly stated that the ninety cents was for a kosher hotdog that I had refused to let him pay for at lunch that afternoon.
>
> After this visit, we continued to talk often on the phone. During these phone conversations, Zielony continued to tell me that he wanted to give me $2,500,000.90. A few days before he passed away, Zielony told me to contact [Defendant], who would write me a check for that amount. He gave me [Defendant's] address and phone number, and identified [Defendant] as the executor of his estate....

(Linthicum Decl. ¶¶ 7-11, 13-14, ECF No. 5-1 at 2-4).

## II. General jurisdiction

"For general jurisdiction to exist over a nonresident defendant..., the defendant must engage in 'continuous and systematic general business contacts,' that approximate physical presence in the forum state." *CollegeSource*, 653 F.3d at 1073 (quoting *Helicopteros*, 466 U.S. at 416). "To determine whether a nonresident defendant's contacts are sufficiently substantial, continuous, and systematic, we consider their '[l]ongevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets.'" *Id.* (quoting *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1172 (9th Cir. 2006)). "The standard for general jurisdiction is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Id.* (quotation omitted).

Defendant contends Plaintiff has failed to adequately demonstrate that Zielony maintained the continuous and systematics contacts with California necessary for this Court to exercise general jurisdiction. Defendant contends:

> Plaintiff only concludes, without any support, that [Zielony] owned a house in Rancho Bernardo which was sold in 2003..... However, [Defendant], who is one of the executors of [Zielony's] estate, confirms [in his declaration] that the Rancho Bernardo house was not owned by the [Zielony].... Based on these facts and on Plaintiff's admission that [Zielony] was a resident and citizen of New York, general jurisdiction does not lie over [Zielony]'s estate.

(ECF No. 3-1 at 10 (citations omitted)). Plaintiff contends that she has "establish[ed] a prima facie showing that Zielony availed himself of the protections of this State through his personal and professional dealings sufficient for the Court to exercise general personal jurisdiction." (ECF No. 5 at 12).

In her declaration, Plaintiff states that Zielony traveled to California several times over the course of several years, staying at a home in Rancho Bernardo, California during his visits. Defendant has provided evidence, which Plaintiff does not dispute, that the Rancho Bernardo property was never personally owned by Zielony, and that the property was sold to a third-party in 2003. Plaintiff has neither alleged facts nor

provided evidence as to the extent of Zielony's business activities in California. Based upon this record, the Court cannot conclude that Zielony engaged in "substantial" or "continuous and systematic" contacts with California, as would be required for this Court to exercise general jurisdiction over his estate. *See, e.g., Fireman's Fund Ins. Co. v. Greenberg*, No. 07–CV–1566, 2008 WL 2262423, at *4 (S.D. Cal. Feb. 25, 2008) (purchase of a vacation home and visit to that home on several occasions fell short of "substantial" or "continuous and systematic" contact).

## III. Specific Jurisdiction

A court exercises specific personal jurisdiction over a defendant where "the cause of action arises out of or has a substantial connection to the defendant's contacts with the forum." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.,* 284 F.3d 1114, 1123 (9th Cir. 2002) (citation omitted). The Ninth Circuit analyzes specific jurisdiction according to a three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Boschetto*, 539 F.3d at 1016 (quotation omitted). "The plaintiff bears the burden on the first two prongs. If the plaintiff establishes both prongs one and two, the defendant must come forward with a compelling case that the exercise of jurisdiction would not be reasonable. But if the plaintiff fails at the first step, the jurisdictional inquiry ends and the case must be dismissed." *Id.* (quotation omitted).

"Under the first prong of our three-part specific jurisdiction test, [plaintiff] must establish that [defendant] either purposefully availed itself of the privilege of conducting activities in California, or purposefully directed its activities toward California.... [A]vailment and direction are ... two distinct concepts. A purposeful

availment analysis is most often used in suits sounding in contract. A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). "Whether an action is based on contract or tort depends upon the nature of the right sued upon, not the form of the pleading or relief demanded. If based on breach of promise it is contractual; if based on breach of a noncontractual duty it is tortious. If unclear the action will be considered based on contract rather than tort." *Amtower v. Photon Dynamics, Inc.*, 158 Cal. App. 4th 1582, 1602 (2008); *see also Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 343 n.2 (9th Cir. 1996) ("The label that a plaintiff places on his pleadings, however, does not determine the nature of his cause of action."). The Court finds that the Complaint sounds in contract and should be analyzed under a purposeful availment standard. *See Boschetto*, 539 F.3d at 1016.

"To have purposefully availed itself of the privilege of doing business in the forum, a defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state. Our evaluation of the jurisdictional significance of a defendant's contract or other business in the forum is not rigid and formalistic, but rather practical and pragmatic." *Id.* (quotation omitted). "The first step of the [purposeful availment] specific jurisdiction analysis involves a qualitative evaluation of the defendant's contact with the forum state.... Th[e] purposeful availment requirement is the test for the fundamental determination of whether 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). In applying purposeful availment standard, "we are guided by the Supreme Court's admonition that the formation of a contract with a nonresident defendant is not, standing alone, sufficient to create jurisdiction." *Boschetto*, 539 F.3d at 1017 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) ("If the question is whether an individual's contract with an out-of-state party *alone* can

1 automatically establish sufficient minimum contacts in the other party's home forum,
2 we believe the answer clearly is that it cannot.")).

3   Defendant contends Plaintiff has failed to adequately allege that Zielony purposefully availed himself of the privilege of conducting business activities in California:

> Even taking the Complaint's allegations as true, California has nothing to do with this case. Plaintiff allegedly called [Zielony] in New York seeking the 'gift.' [Zielony] did not reach out to California or avail himself of the privilege of conducting activities in California. Plaintiff alleges that [Zielony] directed [Defendant], a New York attorney, to issue the check. This act had nothing to do with California. Plaintiff alleges that she was required to obtain the check from [Defendant] in New York after [Zielony]'s death. Again, this has nothing to do with California. Nothing about the facts and circumstances alleged in the Complaint shows any relationship of the claim to California.

*Id.* at 10-11.

   Plaintiff contends that "Zielony purposefully availed himself of California by promoting and allowing the transaction between him and Plaintiff to take place in California." (ECF No. 5 at 13). Plaintiff asserts:

> Zielony formed the contract at issue in California and contemplated its future effects in California. He came to California, met with [Plaintiff] in California, and promised her that he would give her $2,500,000.00 while both parties were physically in California. Decl. of [Plaintiff], p. 3, ¶ 13. Zielony's promise with [Plaintiff] was discussed afterwards in phone conversations and when Zielony would visit [Plaintiff] in California. *Id*. at p. 3, ¶ 14.

*Id.* at 14. Plaintiff contends that "Zielony also purposefully directed his contact to California by instructing [Defendant] to send [Plaintiff] the check." *Id.*

   In her declaration, Plaintiff states that she and Zielony were together in California in 2009 when Zielony told Plaintiff "that he wanted to give [her] $2,500,000.90." (Decl. Pl. ¶ 13, ECF No. 5-1 at 3). However, in the Complaint, Plaintiff repeatedly alleges that the contract at issue was actually formed over the telephone in late August 2012, when Zielony was in New York and Plaintiff was in California, where she resided. *See* Complaint ¶ 16, 19, ECF No. 1 at 4 ("On or around late August 2012, when [Plaintiff] and Zielony spoke on the phone, [Plaintiff] accepted Zielony's gift of $2,500,000.00," resulting in "a valid contract"); *id.* ¶¶ 20-21 (referring to the "contract" formed during

a late August 2012 telephone call, and alleging that "Plaintiff has duly performed all the terms and conditions of the contract on her part"). Plaintiff's presence and/or residency in California during the formation of the purported contract is, by itself, insufficient to constitute purposeful availment, especially considering Plaintiff's allegation that she initiated the telephone call with Zielony. *See Burger King Corp.*, 471 U.S. at 478; *see also Thomas P. Gonzalez Corp.*, 614 F.2d at 1254 ("The [defendant] validly argues that use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the state.") (citation omitted); *id.* at 1253 ("The [defendant] correctly notes that only its activities in California, and not [plaintiff]'s, can supply the basis for jurisdiction. It is not sufficient that the plaintiff is a California resident, or that an act outside California imposes an economic burden on a California resident.") (citations omitted); *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 816 (9th Cir. 1988) ("The parties conducted contract execution and termination by international mail. Such contacts are insufficient to constitute an act purposefully availing [defendant] of California laws."). The allegations and evidence that Zielony conducted business in California with individuals and businesses unrelated to the purported contract at issue are not sufficient to confer specific personal jurisdiction. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, — U.S. —, 131 S. Ct. 2846, 2851 (2011) ("In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.") (quotation omitted); *cf. Boschetto*, 539 F.3d at 1016 (for specific jurisdiction, "the claim must be one which arises out of or relates to the defendant's forum-related activities").

The Court concludes that Plaintiff has failed to satisfy her burden of showing that Zielony purposefully availed himself of the privilege of doing business in California. Plaintiff has failed to satisfy her burden of establishing the first prong of the Ninth Circuit's three-prong specific jurisdiction test. *See Boschetto*, 539 F.3d at 1016. Therefore, "the jurisdictional inquiry ends." *Id.* ("[I]f the plaintiff fails at the first step,

the jurisdictional inquiry ends....") (quotation omitted).

## IV.     Dismiss or Transfer the Action

Having concluded that the Court lacks personal jurisdiction over Zielony – i.e., over Zielony's estate, of which Defendant is executor – the Court must determine whether to dismiss this action pursuant to the Federal Rule of Civil Procedure 12(b)(2) or transfer this action to another court pursuant to 28 U.S.C. § 1631. *See Pamplona ex rel. Pamplona v. Hernandez*, No. 08cv2205, 2009 WL 578578, at *3 (S.D. Cal., Mar. 5, 2009) (after concluding that the court did not have personal jurisdiction over two defendants, "[t]he Court must determine whether transfer [pursuant to § 1631] is more appropriate than dismissal"). "The transfer of civil actions among federal courts to cure jurisdictional defects is governed by 28 U.S.C. § 1631." *Cruz-Aguilera v. INS*, 245 F.3d 1070, 1074 (9th Cir. 2001). Section 1631 provides: "Whenever a civil action is filed in a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought at the time it was filed...." 28 U.S.C. § 1631. A § 1631 transfer is appropriate if "(1) the transferring court lacks jurisdiction; (2) the transferee court could have exercised jurisdiction at the time the action was filed; and (3) the transfer is in the interest of justice." *Cruz-Aguilera*, 245 F.3d at 1074; *see also id.* ("When determining whether transfer is in the interest of justice, courts have considered whether the failure to transfer would prejudice the litigant, whether the litigant filed the original action in good faith, and other equitable factors.").

In opposition to Defendant's Motion to Dismiss, Plaintiff failed to address whether, in the event the Court found jurisdiction to be lacking, Plaintiff requests dismissal or transfer of this action to the Eastern District of New York[1] pursuant to 28

---

[1] Defendant states in his declaration: "During ... the time period described in the Complaint when Plaintiff alleges a telephone call to [Zielony], [Zielony] was under hospice care at his home in Garden City, New York." (ECF No. 3-2 at 3). Plaintiff does not dispute this statement. The Court takes judicial notice of the fact that Garden City, New York is located within the Eastern District of New York. *See Martignago v. Merrill Lynch & Co., Inc.*, No. 11 CIV. 3923 PGG, 2012 WL 112246, at *4 n.2

1  U.S.C. § 1631. No later than ten days from the date this Order is filed, and without
2  waiving any objections to this Order, Plaintiff may file a request for this action to be
3  transferred to the Eastern District of New York. If Plaintiff does not file a request for
4  this action to be transferred within ten days, the Court will dismiss this action without
5  prejudice pursuant to Federal Rule of Civil Procedure 12(b)(2).

## CONCLUSION

IT IS HEREBY ORDERED that Plaintiff Christine Linthicum has failed to satisfy her burden of showing that this Court has personal jurisdiction over Defendant. The Motion to Dismiss (ECF No. 3) remains pending. No later than ten days from the date this Order is filed, and without waiving any objections to this Order, Plaintiff may file a request for this action to be transferred to the Eastern District of New York. If Plaintiff does not file a request for this action to be transferred within ten days, the Court will grant the Motion to Dismiss and dismiss this action without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(2).

DATED: September 10, 2013

**WILLIAM Q. HAYES**
United States District Judge

---

(S.D.N.Y. Jan. 12, 2012) ("Garden City, New York ... is located in the Eastern District of New York").